UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AIMEE O'NEIL and M.O.,

                Plaintiffs,

       v.                                            5:09-CV-0983
                                                                 (GTS/GHL)

MARY PONZI-FLETT, OSWEGO COUNTY LEGISLATURE, and
COUNTY OF OSWEGO,

                Defendants.

---

AIMEE O'NEIL and M.O.,

                Plaintiffs,

      v.                                         5:09-CV-0985
                                                        (GTS/GHL)

FLOYD WEENO PONZI, Owner Deluxe Painting,

                Defendant.

---

APPEARANCES

AIMEE O'NEIL and M.O.
Plaintiffs *pro se*

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION & ORDER

### I. BACKGROUND

The Clerk has sent to the Court for review *pro se* complaints, applications to proceed *in forma pauperis*, and letter-requests submitted for filing by Aimee O'Neil[1] and M.O. in the above-named

---

[1] A review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that Aimee O'Neil is no stranger to filing *pro se* complaints in federal court. In 2007, Plaintiff filed over thirty (30) civil actions in the Western District of New York. All actions were dismissed and an injunction was issued to prevent future filings. *See*, *e.g.*, *O'Neil v. Fulton Police Dept.*, Case No. 07-CV-6045L (W.D.N.Y. Feb. 28, 2007). Similarly on July 19, 2007, a pre-filing injunction was issued against Aimee O'Neil in the Northern District of West Virginia. *O'Neil v. Cornerstone Homes*, 2007 WL 2116410 (N.D.W.V. July 19, 2007)*, aff'd by O'Neil v. Oswego County Dept. of Soc.*

(continued...)

actions. Dkt. Nos. 1-3. The filings in both cases are identical.[2] Based on the following, I recommend that Plaintiff Aimee O'Neil may file an amended complaint in each action if she wishes to avoid dismissal of that action.

However, as an initial matter, the Court notes that M.O., who is named as a plaintiff, is a minor. *See* Dkt. No. 1, p. 3, ¶ 8; Dkt. No. 2 at p. 2 (M.O. listed as a dependant). However, a minor may not bring an action on his or her own behalf in federal court. *See* Fed. R. Civ. P. 17(c). Therefore, M.O. may not proceed on his or her own behalf. Accordingly, I recommend that M.O. be dismissed as a plaintiff.

## II. DISCUSSION

**A.   The Complaints**

Pursuant to 28 U.S.C. § 1915(e), the Court shall dismiss the case at any time if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, there is a responsibility on the Court to determine that a complaint may be properly maintained in the District before it may permit a plaintiff to proceed with an action *in forma pauperis*. *Id.*; *see also* 28 U.S.C. § 1915A(b)(1). In determining whether an action is frivolous, the Court must look to see whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Although the Court has a duty to show liberality towards *pro se*

---

[1](...continued)
*Servs.*, 258 Fed. Appx. 581 (4th Cir. 2007). In this District, Plaintiff has filed two previous *pro se* actions: *O'Neil, et al. v. Diskey*, 5:09-CV-0540 (GTS/GHL) (transferred to another district) and *O'Neil, et al. v. Van Auser, et al.* 5:09-CV-594 (NAM/GHL) (dismissed due to lack of subject matter jurisdiction).

[2] The Clerk of the Court determined that Aimee O'Neil intended to commence two separate actions based on the filings, which included two different Civil Cover Sheets.

litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the Court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis*. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the Court, *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974), as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327. *See generally Moreman v. Douglas*, 848 F. Supp. 332 (N.D.N.Y. 1994) (Scullin, D.J.).

In light of Plaintiff's[3] *pro se* status, the Court examined the complaints carefully to determine the sufficiency of the claims. Plaintiff states that the complaints are brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Dkt. No. 1.

To state a claim for a RICO violation, the plaintiff has two threshold pleading requirements. First, she must allege that the defendants, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly invest in, or maintain an interest in, or participate in an enterprise, the activities of which affect interstate or foreign commerce. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984). Second, she must allege that she was injured in her business or property by reason of a violation of Section 1962. *Id.* However, "unsubstantiated and conclusory allegations that certain named and unnamed defendants participated in certain enterprises and took actions at unspecified times and places are insufficient to state a RICO claim." *Mendlow v. Seven Locks Facility*, 86 F. Supp. 2d 55, 58 (D. Conn. 2000) (citing

---

[3] Any reference to "Plaintiff" is to Aimee O'Neil, as the Court recommends dismissal of M.O.

*Molina v. State of New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995)).

Plaintiff's identical complaints are forty-seven (47) pages of single-spaced text in length, not including attachments. Dkt. No. 1. Essentially, Plaintiff alleges that Defendant Floyd Weeno Ponzi's painting business is a veil for an "illegal gambling ring" that he runs in Oswego, New York. *Id.* at p. 2. She claims that Defendant Mary Ponzi-Flett, an Oswego County Legislator, is "deliberately concealing and/or hiding her power and privilege to cover up for her brother Floyd Weeno Ponzi's phony painting business." *Id.* at p. 1. She further claims that a pattern of "deliberate intentional HATE crimes" was perpetuated against herself and her children by Defendants and others, "in order to conceal the racketeering." *Id.* at p. 2 (emphasis in original).

As examples of the wrongful acts committed against Plaintiff, Plaintiff claims that the following occurred:

> (1) In 2003, Plaintiff was physically injured when the police executed a "no knock search warrant" at Plaintiff's residence in Oswego County, which she connects to Defendant Ponzi and which she claims was a "retaliation claim brought up upon by Oswego County and its legislators." Dkt. No. 1 at p. 13.
>
> (2) Plaintiff witnessed a fatal shooting at a concession stand at a high school in Syracuse, New York, which she claims was part of the "pattern" of hate crimes. *Id.*
>
> (3) Oswego County "falsified and/or covered up" Plaintiff's grandmother's death certificate "as part of a continuation of patterns of fraud and cover-ups." *Id.* at p. 16.
>
> (4) Oswego County "or someone thereof connected, such as a county legislator, has illegally bugged the plaintiff's computer and has been eavesdropping." *Id.*
>
> (5) Plaintiff moved to West Virginia, where she discovered that her telephone was bugged and that she was being followed. She claims that her neighbors harassed her by purchasing new vehicles that "they could not financially or justifiably afford." Plaintiff connects these alleged activities to Defendant Ponzi. *Id.* at p. 18.
>
> (6) Plaintiff thereafter moved to Florida where her mail was stolen, she received money orders "from an overseas scam," and was intimidated by various individuals. *Id.* at pp.

18-22.

(7) Defendant Ponzi's "cronies" want Plaintiff and M.O. to "go to mountainous types of areas," such as Colorado, "where a car could run you off [the road]." *Id.* at pp. 22-23.

(8) Defendant Ponzi has "direct knowledge of what is being typed and printed" on Plaintiff's computer. *Id.* at p. 25.

(9) Defendant Ponzi eavesdropped on Plaintiff's residence in order to "destroy" her consignment store in Geneva, New York, and subsequently influenced the closure of the store.[4] *Id.* at pp. 28-29.

(10) Defendant Ponzi controls "every move" Plaintiff makes, has bugged her home and eavesdropped on her, and is controlling who Plaintiff dates and who she wants to date. *Id.* at p. 30.

(11) Defendant Ponzi "and his cohorts are using all kinds of degenerate members of the community to make fun of [Plaintiff]." *Id.* at p. 31.

(12) Due to the "Ponzi control," in Oswego County, Plaintiff did not receive child support payments for two of her children. *Id.* at 37.

Plaintiff claims that she "has an expert witness who has studied organized crime behavior at Harvard University," who "determined that the retaliation [by the "Ponzi scheme"] against the plaintiff and her children is only something comparable to Cambodian prison camps." Dkt. No. 1 at p. 34.

Plaintiff also claims that she has obtained several estimates from security companies who are willing to accompany Plaintiff's children to various activities due to "the pattern of perpetrated, hateful acts on [her] children." Dkt. No. 1 at p. 41. Plaintiff further claims that she obtained an estimate from a "reputable agency in NYC" who will "debug" her residence. *Id.*

The complaints also contain information regarding numerous other seemingly unrelated topics, including the following: (1) Oswego County has "demonstrated a repeated pattern" of discriminating

---

[4] Plaintiff submitted photographs of what appears to be a consignment store, and a copy of a newspaper advertisement describing the grand opening of the store. Dkt. No. 1, Attachments.

against women and children, Dkt. No. 1 at p. 11; (2) Oswego County is "deliberately concealing" an individual in order to prevent Plaintiff from determining the paternity of one of her children, *Id.* at p. 12; (3) Plaintiff was involved in, and/or witnessed recent motor vehicle accidents, *Id.* at pp. 26-27; and (4) Plaintiff witnessed a fatal stabbing in approximately 1976. *Id.* at p. 27.

After a review of the complaints, the Court finds that the complaints fail to state a claim for relief. Her allegations are unsubstantiated, speculative, and wholly conclusory. These allegations are insufficient to state a RICO claim. *See Mendlow*, 86 F. Supp. 2d at 58. Therefore, the complaints should be dismissed for failure to state a claim upon which relief may be granted.

The Court has also considered whether the complaints should be dismissed based on frivolousness. "An action is 'frivolous' within the meaning of § 1915(e)(2)(B)(i) 'when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory . . . *i.e.*, either the claims lacks an arguable basis in law or a dispositive defense clearly exists on the face of the complaint.'" *McCulley v. Chatigny*, 390 F. Supp. 2d 126 (D. Conn. 2005) (quoting *Livingston v. Adirondack Bev. Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted)).

Here, the allegations are speculative, conclusory, and, at times, delusional. For instance, as noted, Plaintiff claims that Defendant Ponzi controls "every move" she makes, has bugged her home, eavesdropped on her, and controls who she dates and who she wants to date. Dkt. No. 1 at p. 30. Plaintiff further claims that not only are Defendants Ponzi and Flett planning to "destroy" her life, her own family is "out to destroy [her] life by the pattern of conspiracy . . . and [by] paid informants." *Id.* at pp. 15, 38. Plaintiff also claims that she has received correspondence from the White House, indicating that social workers tried to conceal, *inter alia*, the "illegal gambling ring." *Id.* at pp. 23, 38. In light of

the foregoing, the complaints should be dismissed based on frivolousness.

However, in light of the special solicitude afforded to *pro se* litigants in the Second Circuit, I recommend that Plaintiff Aimee O'Neil may file one amended complaint in each case within thirty (30) days of the filing date of any Order adopting this Report and Recommendation should she wish to avoid dismissal of the actions.  Any amended complaint, which shall supersede and replace in its entirety Plaintiff's original complaints (Docket No. 1), must contain a short and plain statement of the claim showing that she is entitled to relief with all averments of claim set forth in numbered paragraphs.  *See* Fed. R. Civ. P. 8(a)(2) & Fed. R. Civ. P. 10(b).  The amended complaint must also allege claims of misconduct or wrongdoing against defendants which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction.

**B.    Applications to proceed *in forma pauperis***

Regarding the applications to proceed *in forma pauperis*, Plaintiff Aimee O'Neil's applications are granted.  Dkt. No. 2.

**C.    Letter-Requests**

Plaintiff Aimee O'Neil requests scheduling orders.  Dkt. No. 3.  The requests are denied as premature in light of the foregoing.

Accordingly, it is hereby

**RECOMMENDED**, that M.O. be **DISMISSED** as a plaintiff from both cases; and it is further

**RECOMMENDED**, that Plaintiff Aimee O'Neil may file one amended complaint in each case **within thirty (30) days** of the filing date of any Order(s) adopting this Report and Recommendation. **Any amended complaint, or other submission to the Court, must clearly state the case name and case number**; and it is further

-7-

**RECOMMENDED**, if Plaintiff Aimee O'Neil fails to timely file an amended complaint in *O'Neil v. Mary Ponzi-Flett, et al.*, Case No. 5:09-CV-0983, the Clerk shall enter judgment dismissing that case without further order of this Court due to Plaintiff Aimee O'Neil's failure to comply with the terms of any Order adopting this Report and Recommendation.  Similarly, if Plaintiff Aimee O'Neil fails to timely file an amended complaint in *O'Neil v. Floyd Weeno Ponzi*, Case No. 5:09-CV-0985, the Clerk shall enter judgment dismissing that case without further order of this Court due to Plaintiff Aimee O'Neil's failure to comply with the terms of any Order adopting this Report and Recommendation; and it is further

**RECOMMENDED**, that upon the filing of an amended complaint, the file be returned to the Court for further review; and it is further

**ORDERED**, that the *in forma pauperis* applications (Dkt. No. 2 in both cases) are **GRANTED**;[5] and it is further

**ORDERED**, that the letter-requests (Dkt. No. 3 in both cases) are **DENIED** as premature; and it is further

**ORDERED**, that the Clerk serve copies of this Report-Recommendation & Order on Aimee O'Neil and M.O. by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human*

---

[5] Plaintiff should note that although the applications to proceed *in forma pauperis* have been granted, Plaintiff will still be required to pay fees that she may incur in the actions, including copying and/or witness fees.

*Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 9, 2009
       Syracuse, New York

                                              _____
                                              George H. Lowe
                                              United States Magistrate Judge